IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| SHEA T. ADAMS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| | )    **Case No.** _____ |
| v. | ) |
| | )    **JUDGE** _____ |
| WILLIAMSON MEDICAL CENTER, | ) |
| | )    **JURY DEMAND** |
|     Defendant. | ) |

## COMPLAINT

Plaintiff Shea T. Adams, through counsel and for her Complaint against the Defendant Williamson Medical Center under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, states as follows:

### I.    PARTIES

1. Plaintiff Shea T. Adams is a citizen and resident of Columbia, Maury County, Tennessee.

2. Defendant Williamson Medical Center is a hospital licensed to do business and is doing business in Franklin, Williamson County, Tennessee, with its principal place of business located at 4321 Carothers Parkway, Franklin, Tennessee and it can be served through its registered agent, Don Webb, 4321 Carothers Parkway, Franklin, Tennessee 37067. At all times relevant to this Complaint, Williamson Medical Center employed 15 or more persons.

### II.    JURISDICTION AND VENUE

3. The allegations of Paragraphs 1 through 2 of this Complaint are incorporated by reference as if fully set forth herein.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as Plaintiff brings her claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

5. Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on December 22, 2016 alleging sex discrimination and retaliation based upon the facts alleged in this Complaint. The EEOC issued its Notice of Right to Sue upon Plaintiff's request on January 24, 2018. A true and correct copy of the Notice of Right to Sue is attached to this Complaint as Exhibit 1.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### III. FACTUAL ALLEGATIONS

7. The allegations of Paragraphs 1 through 6 of this Complaint are incorporated by reference as if fully set forth herein.

8. Plaintiff was employed by Defendant as an EKG Technician beginning in June 2011.

9. Plaintiff became licensed as a Registered Nurse in 2012 and was then employed by Defendant as an RN in its Critical Care Unit ("CCU").

10. Plaintiff remained employed by Defendant until December 2017.

11. In April 2016, Plaintiff reported to Defendant's HR representative, Phyllis Molyneux, that a co-worker was making ongoing sexually explicit and harassing comments. As part of her report to Ms. Molyneux, Plaintiff told her that she feared retaliation from her supervisor and from the administration of the hospital because of her report.

12. The co-worker consistently made sexually inappropriate comments to Plaintiff and to others that Plaintiff either heard or about which she knew. This included, but is not limited to, the following examples:

   a. The co-worker discussed and described his son's girlfriend's genitalia at the nurse's station. His son's girlfriend was a minor at the time.

   b. When the co-worker was assisting a patient in using the urinal, he called another nurse into the room and asked her if she could handle unzipping the patient's pants and pulling out his penis.

   c. On another occasion, the co-worker picked up a cucumber, placed it in an erect position on the seat of a chair and told another nurse to come take a ride.

13. The co-worker consistently made lewd comments almost every time Plaintiff worked the same time as him. Other nurses told Plaintiff he did the same with them.

14. More than a month after Plaintiff made her report to Ms. Molyneux, Plaintiff's unit director, Jennifer Murphy, asked to meet with her to address her report. Defendant's HR employee Scott Buchanan was also present. Ms. Murphy admitted that the co-worker's behavior was not appropriate, but also told Plaintiff that it was not acceptable to give the perception that his behavior constituted sexual harassment.

15. Ms. Murphy also said that if Plaintiff wanted her to hold the co-worker accountable, she would have to hold everyone accountable. Plaintiff was not aware and is not aware of other employees making sexual explicit and harassing comments as the co-worker did.

16. No action was taken against the co-worker and he continued his behavior.

3

Case 3:18-cv-00384   Document 1   Filed 04/19/18   Page 3 of 8 PageID #: 3

17. Shortly after that meeting, Plaintiff learned about a position with Sound Inpatient Physicians, Inc. ("Sound") for a Hospitalist RN. Plaintiff learned about that position from physicians at Defendant who encouraged her to apply.

18. Sound provides physician support and performance management to improve clinical care. The Hospitalist RN position for which Plaintiff applied would work with doctors at Defendant, but would be separately employed.

19. Plaintiff applied for the Hospitalist RN position and went through multiple interviews with Sound personnel. The Sound personnel with whom she interviewed gave her completely positive feedback and indicated that Plaintiff was the only candidate they were interested in hiring for the position.

20. Sound was required to include Defendant in the process before making a final hiring decision.

21. After interviewing Plaintiff multiple times, Sound decided to proceed with Plaintiff and present her to Defendant as its choice for the Hospitalist RN position.

22. When Sound personnel contacted the Chief Nurse Officer at Defendant, Lori Orme, she told Sound that it should not hire Plaintiff in the Hospitalist RN position. Ms. Orme told Sound that she did not think Plaintiff would be a good fit.

23. Ms. Orme had not worked directly with Plaintiff and had no direct, personal knowledge of her or her work. Any knowledge of Plaintiff would have necessarily come, at least in part, from Plaintiff's direct supervisor, Ms. Murphy.

24. Sound told Plaintiff that Defendant had not approved her hire and that Defendant told Sound to look for another candidate.

25. After Sound told Plaintiff she was no longer being considered for the Hospitalist RN position, Plaintiff reported to Ms. Molyneux that she feared she was being retaliated against in that decision by Defendant refusing to approve her hire because she made a report complaining of sexual harassment. Ms. Molyneux said that she would investigate.

26. Almost a month later, Ms. Molyneux gave Plaintiff a letter stating that the Chief Nursing Officer of Defendant did not want an RN in the Hospitalist RN position. Having an RN was a minimum requirement for the position. The position was eventually filled by an RN.

27. Plaintiff also made another complaint about Mr. Dodson's continued sexually harassing behavior in September 2016. Mr. Dodson made a lewd comment about a banana Plaintiff purchased in the cafeteria, suggesting she would engage in sexual activity with it. Mr. Dodson resigned from Defendant in October or November 2016.

28. After Plaintiff reported her fear that Defendant was retaliating against her by preventing her from being hired by Sound, her supervisors began falsely accusing her of bullying her co-workers, without providing any specific information. Plaintiff later found out that at least some of her co-workers were instructed by management to speak with HR employee Scott Buchanan about Plaintiff, unprompted from any complaint by them. The director of the CCU, Mike Stone, told Plaintiff that he told Mr. Buchanan he had not seen bullying behavior by Plaintiff.

29. These accusations were distressing for Plaintiff because vague accusations were made against her, but she was given no information that would allow her to defend herself or moderate her behavior if needed.

30. After Plaintiff was removed from consideration for the Hospitalist RN position and made her second report of retaliation, she continued to receive increased scrutiny of her job performance.

5

Case 3:18-cv-00384   Document 1   Filed 04/19/18   Page 5 of 8 PageID #: 5

31. On May 9, 2017, Plaintiff's supervisor, Cathy Reinhart, told Plaintiff's co-workers in Plaintiff's absence that Plaintiff must have taken unused medication that was worth a lot of money and that people could have a "party" with it.

32. In reality, Plaintiff had properly marked the medication that was discontinued for a patient and placed it where it was supposed to be. Plaintiff told Ms. Reinhart that when she called her and another employee found the medication properly marked and in the proper place.

33. False allegations that Plaintiff took medication endanger Plaintiff's career and her nursing license.

34. Defendant engaged in the conduct described in this Complaint maliciously or with reckless indifference to Plaintiff's federally protected rights.

## COUNT I: DISCRIMINATION UNDER TITLE VII

35. The allegations of Paragraphs 1 through 34 of this Complaint are incorporated by reference as if fully set forth herein.

36. Plaintiff was subjected to intentional discrimination because of her sex by the intentional conduct of her co-worker consisting of conduct of an unwelcomed sexual nature.

37. The co-worker's conduct was severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile or abusive.

38. Plaintiff considered the co-worker's conduct severe or pervasive enough that it created an intimidating, hostile or abusive work environment and interfered with her work.

39. Management level employees of Defendant knew, or should have known of the alleged sexual harassment.

40. Management level employees of Defendant failed to implement prompt and appropriate corrective action.

41. Defendant's conduct as described in this Count I violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

42. Defendant acted maliciously or with reckless indifference to Plaintiff's federally protected rights.

43. As a direct and proximate result of Defendant's discrimination against her, Plaintiff has suffered and continues to suffer damages for humiliation, embarrassment, emotional pain, mental anguish and loss of enjoyment of life.

## COUNT II: RETALIATION UNDER TITLE VII

44. The allegations of Paragraphs 1 through 44 of this Complaint are incorporated by reference as if fully set forth herein.

45. Plaintiff engaged in conduct protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* by opposing a practice that violated Title VII or that she reasonably believed violated Title VII and/or by assisting or participating in an investigation under Title VII.

46. Plaintiff's exercise of her protected civil rights was known to Defendant.

47. Defendant took an adverse employment action against Plaintiff by preventing her from being hired for the Hospitalist RN position because she engaged in conduct protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

48. Defendant acted maliciously or with reckless indifference to Plaintiff's federally protected rights.

49. As a direct and proximate result of Defendant's retaliation against her, Plaintiff has suffered and continues to suffer damages including, but not limited to, lost wages and benefits, including back pay and front pay, and damages for humiliation, embarrassment, emotional pain, mental anguish and loss of enjoyment of life.

WHEREFORE, Plaintiff respectfully prays as follows:

1. That Plaintiff be awarded judgment on this Complaint.

2. That Plaintiff be awarded damages in an amount reasonable to compensate her for her injuries, including back pay, front pay, benefits, compensatory damages, damages for humiliation, embarrassment, emotional pain, mental anguish and loss of enjoyment of life, and pre-judgment and post-judgment interest.

3. That Plaintiff be awarded punitive damages for Defendant's actions taken maliciously or with reckless indifference to Plaintiff's federally protected rights.

4. That Plaintiff recover her costs and reasonable attorney's fees incurred in prosecuting her claims.

5. That Plaintiff be awarded such other relief as this Court may deem equitable and proper.

6. Plaintiff hereby requests that a jury be empaneled to try all issues so triable.

Respectfully submitted:

**NEAL & HARWELL, PLC**


By: s/Kendra E. Samson
Kendra E. Samson (TN # 018976)
Christopher M. Bellamy (TN # 031798)

1201 Demonbreun Street.
Suite 1000
Nashville, TN 37203
615-244-1713 (telephone)
615-726-0573 (facsimile)
ksamson@nealharwell.com
cbellamy@nealharwell.com

*Counsel for Plaintiff*